23-1552

# United States Court of Appeals for the Federal Circuit

NEENA BISWAS,
*Petitioner*,

v.

DEPARTMENT OF VETERANS AFFAIRS,
*Respondent*.

On Appeal from the Merit Systems Protection Board
Case No. MSPB-1:DA-1221-15-0471-W-2

## REPLY BRIEF FOR PETITIONER

STERLING L. DERAMUS
2229 First Avenue North
Birmingham, Alabama 35203
(205) 504-0189 (Tel)
(205) 449-7392 (Fax)
Email: sderamus@deramuslaw.com

*Counsel for Petitioner*

Becker Gallagher · Cincinnati, OH · Washington, D.C. · 800.890.5001

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... ii

I. Summary of the Argument .......... 1

II. The Agency failed to demonstrate, by clear and convincing evidence, that it would have terminated Appellant absent her protected disclosure .......... 2

A. The Agency never demonstrated why other possible actions were not taken and instead went straight to termination .......... 3

B. Appellant's email to the Secretary is not grounds for termination .......... 3

C. Appellant's complaints over working conditions had nothing to do with her termination .......... 4

D. Dr. Biswas's dispute with Dr. Goodenberger in May 2012 was not considered in the decision to terminate her .......... 5

E. Dr. Biswas never refused to see patients and saw all patients assigned to her .......... 5

F. Dr. Biswas's email of July 12, 2012, was also not grounds for her termination .......... 7

III. The governments other arguments do not demonstrate that the Agency has met its burden of proof .......... 8

A. The government's arguments would turn this Court into a super personnel board .......... 8

B. The third *Carr* factor is not the Appellant's burden .......... 9

C. The government's citations do not mean that the Agency met its burden .......... 10

D. There is no standard of "belief" that is appropriate .......... 10

IV. CONCLUSION .......... 11

CERTIFICATE OF COMPLIANCE .......... 13

## TABLE OF AUTHORITIES

### Cases

*Carr v. Social Sec. Admin.*,
185 F.3d 1318 (Fed. Cir. 1999) .......... 1, 6, 9, 11

*Dale v. Chicago Tribune Co.*,
797 F.2d 458 (7th Cir. 1986) .......... 8

*Fischbach v. District of Columbia Dep't of Corrections*,
86 F.3d 1180 (1996) .......... 8

*Grissom v. Dep't of Veterans Affairs*,
2022 WL 17334715 (Fed. Cir. 2022) .......... 10

*Huffman v. Office of Pers. Mgmt.*,
263 F.3d 1341 (Fed. Cir. 2001) .......... 4

*Lowenstein v. Dep't of Veterans Affairs*,
719 Fed. Appx. 1004 (Fed. Cir. 2017) .......... 10

*Pearson v. VA*,
465 Fed. Appx. 925 (Fed. Cir. 2011) .......... 10

*Whitmore v. Dep't of Labor*,
680 F.3d 1353 (Fed. Cir. 2012) .......... 9

### Statutes

5 U.S.C. § 1221(e)(2) .......... 1, 8, 11

5 U.S.C. § 2302(b)(8) .......... 7

## I. Summary of the Argument

Dr. Biswas's alleged inappropriate behavior, regardless of the findings of whether they occurred or not, are not the standard by which this Court should judge whether to uphold the Administrative Judge's findings. This Court does not sit as a super-personnel board deciding what types of actions should or should not result in termination of an employee who is a whistleblower. Once the Administrative Judge determined that Dr. Biswas's protected disclosures were a motivating factor in her termination, it was the Agency's burden to demonstrate that they would have taken the same action absent the protected disclosure. 5 U.S.C. § 1221(e)(2). Thus, presenting a litany of bad behavior is simply not sufficient. The Agency failed to meet its burden, and the Administrative Judge erred when he required Dr. Biswas to provide a comparator to meet the 3rd *Carr* factor instead of the Agency.

Furthermore, the government's citations to other examples do not demonstrate how in this particular case, the Agency met its their burden in Dr. Biswas's case. Many of the cases cited actually do show how the Agency provided appropriate comparators to meet the *Carr* factors which did not happen in this matter. Finally, this matter is not a credibility determination of whether the Dr. Goodenberger was or was not motivated to retaliate. Once the *prima facie* case is made, as it was here, processes established by Congress and standards developed by this Court should be applied and properly followed in order to determine whether the Agency met its

burden. The Administrative Judge's credibility determination is irrelevant and arguably contradictory to the applicable legal standard.

## II. The Agency failed to demonstrate, by clear and convincing evidence, that it would have terminated Appellant absent her protected disclosure.

The government's argument contends that the Appellant's behavior was so egregious that it justified her termination – presenting a litany of "inappropriate" actions she is said to have taken. However, missing from the government analysis is a showing that all of these supposedly "inappropriate" actions warranted termination – especially since the Agency failed to provide any comparators. Petitioner respectfully argues that simply listing a large number of supposedly deficient actions taken by a whistleblower employee is insufficient to meet the government's burden. Inappropriate behavior happens almost every day in almost every office in the federal government – and indeed in probably every workplace in the country. However such behavior is typically dealt with in a variety of ways, including counseling, mentoring, training, progressive discipline if need be. The Agency fails to explain why it terminated Dr. Biswas rather than take other appropriate or remedial action if it felt that her actions were inappropriate. Indeed, the only rationale given by the Agency for not doing so is that supposedly her brain was fully myelinated and therefore pointless to try. [Appx257]. This not a justifiable legal standard in any known court of law.

### A. The Agency never demonstrated why other possible actions were not taken and instead went straight to termination

Furthermore, it is undisputed that Dr. Biswas had previously demonstrated the capacity to work harmoniously and appropriately. Dr. Biswas received a high satisfactory notation on personal qualities in her last evaluation prior to these incidents. [Appx187, Appx559]. This item includes "emotional stability, relations with staff and community, eliciting cooperation, handling groups and adherence to ethical standards." *Id.* This is important because, regardless of whether the Court considers Appellant's behavior inappropriate, the Appellant, at a minimum, had demonstrated that she was capable of appropriate behavior, and that termination should not have been the Agency's first choice. Indeed, Dr. Holt explicitly recommended that Appellant first be sent for counseling and training, not terminated. Furthermore, there were certain internal regulations that required counseling and training prior to recommending termination. [Appx354].

### B. Appellant's email to the Secretary is not grounds for termination

The first action listed is Appellant's emailing of Secretary Shinseki with her concerns, despite a directive not to do so. Petitioner concedes that the Secretary is a busy individual, and it is normally inappropriate to email him with concerns about illegal behavior in one particular VA Hospital. However, Petitioner respectfully argues that the email itself is still protected activity under the Act. This Court has made it abundantly clear that making disclosures outside of the Chain of Command

is not appropriate grounds for discipline. *Huffman v. Office of Pers. Mgmt.*, 263 F.3d 1341, 1351 (Fed. Cir. 2001). Thus, upsetting and embarrassing leadership at the Dallas VA is not grounds to uphold Dr. Biswas's termination.

Furthermore, Agency officials testified that the Secretary did not direct Agency officials to take any action against Dr. Biswas. The only testimony presented on that point was by Ms. Rogers, the Human Resources Officer for the Dallas VA, who indicated that the Secretary merely wanted the Agency to explain the process for filing a complaint. [Appx157]. Thus sending the email to the Secretary hardly constituted such a grave offense as to warrant termination. Most importantly, the Agency failed to produce any comparator demonstrating that doing so was a terminable offense. And mentioned above, the Agency never tried counseling or other remedial actions and instead went straight to termination.

### C. Appellant's complaints over working conditions had nothing to do with her termination.

The government's next argument is that Dr. Goodenberger testified Dr. Biswas was dissatisfied about working nights, and she "insisted" her schedule be changed to not work nights. [Brief for Respondent, p. 15.] This is not in any way inappropriate or anything warranting discipline of any sort; a physician, or any worker, may complain about various working conditions and should indeed have a right to do so without reprisal. There is nothing in the record to indicate that the Agency terminated individuals for such rather routine complaints. Why this was

considered by the Administrative Judge as justifying her termination, is never explained.

**D. Dr. Biswas's dispute with Dr. Goodenberger in May 2012 was not considered in the decision to terminate her.**

The government lists Dr. Biswas and Dr. Goodenberger's May 2012 argument over Dr. Oyula's initial selection as reason to terminate Dr. Biswas. [*Id.*] However, Dr. Goodenberger's testimony was that he did not consider this incident in her termination. [Appx247]. Thus rehashing the details of this particular incident merely serves as an attempt by the Agency to disparage Dr. Biswas's character, rather than focus on the legal burden of demonstrating the required evidence necessary to support a termination. If the details as to this May 2012 argument were not used against Dr. Biswas by the Agency, it should not be cited as evidence in support of upholding her termination.

**E. Dr. Biswas never refused to see patients and saw all patients assigned to her.**

Next, the Agency refers to an altercation between Dr. Biswas and Dr. Oyula in July of 2012. [Brief for Respondent, p. 15.] The Agency placed great evidentiary weight on this incident, but it again failed to explain why it was a terminable offense and how it determined that the Appellant's conduct and not Dr. Oyula's was inappropriate. The only allegation against her in the record is that Dr. Biswas allegedly refused to see a patient. The Administrative Judge placed great emphasis

on Dr. Holt's testimony that this was inappropriate and disruptive to patient care. [Appx21]. Indeed, failing to see a patient is inappropriate and obviously disruptive to patient care. The undisputed evidence, however, demonstrates that Dr. Biswas never failed to see a patient. [Appx117]. Indeed, the altercation transpired between the Dr. Biswas and Dr. Oyula, Dr. Holt was called immediately, and Dr. Biswas agreed to see the patient regardless of her complaints about Dr. Oyula. [Appx117, Appx118–119]. Dr. Goodenberger admitted on his cross-examination testimony that there was no disruption to patient care. [Appx251].

However, the Administrative Judge, when analyzing the third *Carr* factor, specifically stated that Dr. Biswas did refuse to see patients. [Appx23–24]. This is particularly egregious and contradicts another earlier portion of his decision, because the Administrative Judge conceded, "The appellant testified, and the agency did not dispute, that the appellant saw all her assigned patients on July 21, after Oyula contacted Deputy Chief of Staff Holt." [Appx21]. The overwhelming evidence is that Appellant saw her patients and there was no disruption to patient care. The Agency has failed to demonstrate why termination was the appropriate option.

Perhaps more importantly, Ms. Rogers, the Human Resources Officer for the facility, testified that she "wouldn't define it as typical" for doctors in Dr. Biswas' position to be immediately terminated rather than have some lesser form of discipline imposed. [Appx179]. Ms. Rogers later testified that a physician who had

actually refused patient assignments was not terminated, but was instead reprimanded. [Appx193]. Notably the August 23, 2012, email, occurred one month after the incident between Dr. Biswas and Dr. Oyula, demonstrating that, despite Dr. Holt's concerns about the issue between her and Dr. Oyula, he did not see the occurrence as grounds for termination.

**F. Dr. Biswas's email of July 12, 2012, was also not grounds for her termination.**

The next incident listed by the government was Dr. Biswas making "inappropriate and baseless" comments in an email to other hospitalists. [Brief for Respondent, p. 15.] This incident refers to Dr. Biswas's email of July 12, 2012, where she complained about the hiring of non-citizens over citizens and named several non-citizen doctors. One of those doctors stated that the email was national origin discrimination. It is not. Complaints about the hiring of citizens over qualified non-citizens is a legitimate complaint that is the basis of Dr. Biswas's whistleblowing activity. Even the Administrative Judge conceded that Dr. Biswas's complaints were protected whistleblowing activity. Citizenship is not a prohibited basis under Title VII's anti-discrimination laws. National origin is, but that is fundamentally different. Furthermore, it is wholly irrelevant that Dr. Holt or Dr. Goodenberger considered her emails inflammatory. Accusing someone of violating a law can always be considered "inflammatory," but it is not grounds for termination under 5 U.S.C. § 2302(b)(8). The government's recitation of bad acts by the

Petitioner in no way demonstrates that Appellant would have been terminated absent her protected disclosure.

## III. The governments other arguments do not demonstrate that the Agency has met its burden of proof.

### A. The government's arguments would turn this Court into a super personnel board.

Courts often cite the mantra that they do not sit as a "super personnel department that reexamines an entity's business decisions." *See, e.g., Fischbach v. District of Columbia Dep't of Corrections*, 86 F.3d 1180, 1183 (1996) (*citing, Dale v. Chicago Tribune Co.,* 797 F.2d 458, 464 (7th Cir. 1986)). Yet this is precisely what the government's brief is arguing that this Court do – wade into the minutia of personnel decisions and state what actions should or should not be a terminable offense. The government, by merely citing a litany of wrongdoing on Dr. Biswas' part, and by citing to numerous cases of this Court which may have upheld termination in specific cases, effectively tries to argue by comparison that Dr. Biswas's termination was justified. But this Court is not the super personnel department for federal agencies, deciding what is or is not a terminable offense. Respectfully, that is not possible, nor has this Court really ever done that. What is required is that the Agency demonstrate, by clear and convincing evidence, that *they* would have terminated Appellant/Petitioner absent her protected disclosure. 5 U.S.C. § 1221(e)(2). And the evidence demonstrates that the government has utterly

failed to do – merely reciting a litany of alleged bad acts done by Dr. Biswas. The question that still remains unanswered by the Agency, is why, given that Dr. Biswas received high marks for personal interactions on her most recent performance appraisal, was termination the first course of action taken by the Agency, as opposed to other actions (disciplinary or otherwise).

**B. The third *Carr* factor is not the Appellant's burden.**

Both parties have cited to *Whitmore v. Dep't of Labor*, 680 F.3d 1353 (Fed. Cir. 2012), a case where this Court reversed an Administrative Judge's decision upholding an employee's termination because of a failure to properly assess the *Carr* factors – including *Carr* factor three. The government quotes *Whitmore* that "*Carr* does not impose an affirmative burden on the agency to produce evidence with respect to each and every one of the three *Carr* factors to weigh them each individually in the agency's favor." *Whitmore*, 680 F.3d at 1374. [Respondent's Brief, p. 44.] Indeed, this is true. What neither *Whitmore* nor *Carr* do is shift the burden to the Appellant in a whistleblower protection case to provide a comparator employee. This is exactly, however, what the Administrative Judge did in this case, stating explicitly "there is no evidence that similarly situated employees who were not whistleblowers were treated more favorably." [Appx24]. This is a gross misstatement and misapplication of the standards developed by this Court in both *Whitmore* and *Carr,* and this case should be reversed for that reason.

**C. The government's citations do not mean that the Agency met its burden.**

The government's citations to various other cases also show that the Agency failed to meet its burden and applied cases that were not at all analogous to the instant proceedings. For example, the government cites *Lowenstein v. Dep't of Veterans Affairs*, 719 Fed. Appx. 1004 (Fed. Cir. 2017) and *Grissom v. Dep't of Veterans Affairs*, 2022 WL 17334715 (Fed. Cir. 2022) as examples of this Court upholding an employee's termination for inappropriate behavior. However, in both of those cases, the Administrative Judges found comparators who were not whistleblowers and whom the Agency also treated similarly. *Grissom,* at 21, *Lowenstein,* at 1007. This is not the situation in the case at bar. In *Pearson v. VA*, 465 Fed. Appx. 925 (Fed. Cir. 2011), this Court determined that the Petitioner did not provide evidence that she had made protected disclosures. *Id.* at 928. Thus the government's citations to these cases are simply not helpful to the argument. They also fail to demonstrate how the Agency would have terminated Dr. Biswas in her particular case.

**D. There is no standard of "belief" that is appropriate**

The government's arguments place great emphasis on the Judge's belief that Dr. Goodenberger didn't retaliate against Appellant. This is a rather confusing statement by both the Administrative Judge and the government. On the one hand, the Administrative Judge found that Dr. Biswas had proved by a preponderance of the evidence that her protected disclosure was a contributing factor in her

termination. [Appx10]. Later, the Administrative Judge states that he found that both Ms. Rogers and Dr. Goodenberger to be credible in denying any retaliatory motive. [Appx12]. These two statements are arguably contradictory. Petitioner respectfully but strongly argues that credibility determinations are not the issue. Dr. Biswas is not explicitly required to prove that she was retaliated against. Instead, Congress, in enacting 5 U.S.C. § 1221(e)(2), has set up a process by which these cases are to be decided (i.e., the clear and convincing burden on the Agency), and this Court must follow the applicable legal standards in evaluating this process, i.e. the *Carr* factors. Thus, the government misstates this Court's burden. The Agency's burden has nothing to do with reversing the Administrative Judge's credibility determinations as to retaliatory motivations. Rather the determination is whether the Agency met its legal burden of proof under 5 U.S.C. § 1221(e)(2) and whether under the *Carr* factors, they would have otherwise terminated Dr. Biswas. As argued previously, the Agency has not done this.

## IV. CONCLUSION

The record demonstrates the Agency did not meet its burden to show by clear and convincing evidence it would have taken the same personnel actions in the absence of Dr. Biswas's disclosures, and the Board erred in not considering or analyzing whether the Agency met this heavy burden.

In conclusion, Petitioner respectfully requests this Court reverse and vacate the Board's Final Order, and find that she engaged in protected activity when she complained about the selection of non-citizens over U.S. Citizens; find that Biswas was subject to covered personnel actions when the Agency first rescinded her permanent status and second terminated her; find that Biswas's protected disclosures were a contributing factor in the adverse actions taken against her; find the Agency failed to prove by clear and convincing evidence it would have taken the same actions in the absence of Biswas's protected whistleblowing; and remand this matter to the Board for judgment in Biswas's favor and all appropriate remedies, including back pay, reinstatement, compensatory damages for the emotional distress and reputational harm caused by the Agency, and her attorney's fees. In the alternative, Biswas respectfully requests that the Court vacate the Board's Final Decision and remand for reconsideration of the Agency's chosen penalty of termination.

Respectfully submitted,

/s/ Sterling L. Deramus
STERLING L. DERAMUS
2229 First Avenue North
Birmingham, Alabama 35203
(205) 504-0189 (Tel)
(205) 449-7392 (Fax)
Email: sderamus@deramuslaw.com

*Counsel for Petitioner*

## CERTIFICATE OF COMPLIANCE

1. This brief complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[X] this brief contains [2,788] words.

[ ] this brief uses a monospaced type and contains [*state the number of*] lines of text.

2. This brief complies with the typeface and type style requirements because:

[X] this brief has been prepared in a proportionally spaced typeface using Microsoft Office Professional Plus 2016 in 14-pointTimes New Roman; *or*

[ ] this brief has been prepared in a monospaced typeface using [state name and version of word processing program] with [state number of characters per inch and name of type style].

/s/ Sterling L. Deramus
STERLING L. DERAMUS
2229 First Avenue North
Birmingham, Alabama 35203
(205) 504-0189 (Tel)
(205) 449-7392 (Fax)
Email: sderamus@deramuslaw.com

*Counsel for Petitioner*